# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Sidney I. Schenkier | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 3939 | **DATE** | 8/16/2001 |
| **CASE TITLE** | Sank Phillips vs. Larry G. Massanari | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **ENTER MEMORANDUM OPINION AND ORDER.** The Commissioner's motion for summary judgment [doc. # 7] is denied. Plaintiff's motion for summary judgment [doc. # 6] is granted; the Commissioner's decision is reversed, and the case is remanded for further proceedings consistent with this opinion, pursuant to Sentence IV, 42 U.S.C. § 405(b).

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | No notices required, advised in open court. |
|---|---|
| | No notices required. |
| ✓ | Notices mailed by judge's staff. |
| | Notified counsel by telephone. |
| | Docketing to mail notices. |
| | Mail AO 450 form. |
| | Copy to judge/magistrate judge. |

number of notices

AUG 16 2001
date docketed

docketing deputy initials

8/16/2001
date mailed notice

JJK
courtroom deputy's initials

FILED FOR DOCKETING
01 AUG 16 PM 2: 44

Date/time received in central Clerk's Office

JJK
mailing deputy initials

Document Number

15

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

SANK PHILLIPS,                    )
                                  )
    Plaintiff,            )
                                  )   No.  00 C 3939
vs.                               )
                                  )   Magistrate Judge Schenkier
LARRY G. MASSANARI,               )
Commissioner of Social Security,  )
                                  )
    Defendant.[1]        )

DOCKETED
AUG 1 7 2001

## <u>MEMORANDUM OPINION AND ORDER</u>[2]

The plaintiff, Sank Phillips ("Mr. Phillips"), seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB"), pursuant to the Social Security Act, 42 U.S.C. §405(g). Mr. Phillips seeks summary judgment reversing the Commissioner's decision denying his claim for DIB or, in the alternative, remanding the case to the Commissioner for further proceedings (doc. # 6). The Commissioner has filed a cross-motion for summary judgment in his favor (doc. # 7). For the reasons stated below, the Court denies the Commissioner's motion for summary judgment, grants the motion of Mr. Phillips, and remands this case.

---

[1] Mr. Massanari, the Acting Commissioner of Social Security, is substituted as defendant in place of William A. Halter, the previous Acting Commissioner, pursuant to Fed. R. Civ. P. 25(d)(1).

[2] By the parties' consent, on December 26, 2000, this case was reassigned to this Court, pursuant to 28 U.S.C. § 636(c)(1) and Northern District of Illinois Local Rule 73.1(b), to conduct any and all proceedings and to enter final judgment (doc. # 8, 9, 10).

## A.    Procedural History.

On May 20, 1998, Mr. Phillips filed an application for DIB alleging that he became disabled on October 28, 1997 (R. 48) due to back problems, nerve damage, and pain and numbness in his legs and back, all of which made it difficult for him to walk (R. 58, 69). His application was denied on July 20, 1998 (R. 21-24), and the denial was affirmed upon reconsideration on October 21, 1998 (R. 26-28). On October 27, 1998, Mr. Phillips filed his Request for Hearing (R. 29), and, on March 2, 1999, he appeared with counsel and testified at an administrative hearing before an Administrative Law Judge ("ALJ") (R. 184-214). The ALJ issued a decision on June 11, 1999, denying Mr. Phillips's claim for benefits. The ALJ found that Mr. Phillips's impairment, although severe, does not rise to the level of a legal disability, and that Mr. Phillips retains the residual functional capacity ("RFC") to perform his past relevant work as a crane operator and fork lift driver (R. 10-16).

On July 14, 1999, Mr. Phillips filed a Request for Review (R. 5), which was denied by the Appeals Council on April 28, 2000. At that point, the ALJ's decision became the final decision of the Commissioner of Social Security, subject to judicial review. *See Luna v. Shalala*, 22 F.3d 687, 689 (7th Cir. 1994). On June 28, 2000, Mr. Phillips timely filed his complaint in federal court seeking reversal or remand of the Commissioner's decision.

## B.    Factual Background.

Mr. Philips was born on July 28, 1947 (R. 48), and he is currently 53 years old. He completed two years of college (R. 62, 194). For twenty five years, Mr. Phillips worked as a crane operator and forklift driver (R. 62, 195). His position as an overhead crane operator involved remote operation of the crane and required up to a full day of walking (R. 65, 195-97); however, the position

2

involved no hand lifting and only occasional bending (R. 195, 213). When he did not run the crane, Mr. Phillips worked as a forklift driver (*Id.*). This position involved driving a jeep to move metal materials and required occasional forward bending to sit down and to control the vehicle, but no hand lifting (R. 195, 212). In the Social Security Administration Disability Report, Mr. Phillips stated that the amounts of physical activity involved during his typical workday comprised up to four hours of standing, one hour of sitting and only occasional bending (R. 65). The heaviest weight he lifted or carried did not exceed five pounds (*Id.*). The Vocational Expert ("VE") characterized Mr. Phillips's employment as light, semi-skilled and non-transferable to the sedentary level (R. 212-13). The VE opined that Mr. Phillips's position as a crane operator involved merely occasional bending (R. 212); his job as a forklift driver entailed only occasional bending to enter the jeep and reach the vehicle's controls (R. 213).

Mr. Phillips injured his back and right arm on April 9, 1997, while working (R. 83-84, 197). After the injury, he visited and received treatment from Alexian Brothers Medical Center (R. 83-87). The examining doctor diagnosed Mr. Phillips with tenderness to the paraspinous muscles[3] of the lower back (lumbar strain) and tenderness of the forearm muscles of the right arm (R. 83, 88). X-rays were not obtained, and the patient was released with a prescription for Naprosyn and Flexeril to relieve pain and stiffness (R. 83).

Initially, the treating physicians allowed Mr. Phillips to work with restrictions on bending, lifting, stooping, and use of the right arm (R. 83, 95-99), and he returned to work on light duty (R. 131-36, 142). However, on April 30, 1997, Mr. Phillips underwent an MRI scan which showed the

---

[3]Paraspinous muscles are muscles associated with the spine. J.E. SCHMIDT, M.D., ATTORNEY'S DICTIONARY OF MEDICINE AND WORD FINDER P-73 (Matthew Bender & Co, Inc. 28th ed. 1995 & Supp. 2000).

presence of disc degeneration at multiple levels in his lumbar spine with loss of hydration of the

intervertebral discs, particularly at the L1-L2, L3-L4 and L5-S1 disc spaces (R. 109). The test

indicated disc bulging with mild impingement on the spinal canal at L3-L4, and spinal stenosis

associated with facet joint and ligamentus hypertrophy at L4-L5 (R. 109-10, 117). By August 1997,

due to continued pain in his back and legs, physicians limited Mr. Phillips to no prolonged standing

or walking (R. 117-18, 130). The examining physician, Dr. Emanuel Semerad, noted lumbar spine

pain with extension or lateral bending, and with straight leg raising to 70 degrees in both right and

left legs (R. 118). Dr. Semerad also reported multiple level disc degeneration and bulging discs,

along with hypertrophic changes in the ligament and the facet joint causing a spinal stenosis (R.

118).[4] An electromyogram ("EMG") and nerve conduction studies conducted on August 13, 1997,

indicated that Mr. Phillips suffered from an acute left L5 radiculopathy (R. 121).[5]

In August and September of 1997, Mr. Phillips continued to experience pain in his back and

obtained treatment from Dr. Robert Strzyz, who diagnosed him with lumbar spinal stenosis with

probable herniated nucleus pulposis[6] at L4-5, and L3-4 (R. 105), with significant impairment of

functional ability, which warranted surgical treatment (R. 105-06, 153).

On November 12, 1997, Mr. Phillips took a medical leave of absence from his job as a crane

operator and forklift driver, and underwent a surgical procedure called lumbar laminectomy[7] and

---

[4]Spinal stenosis generally results from lumbar spinal canal narrowing, causing pressure on the sciatic nerve roots. THE MERCK MANUAL OF DIAGNOSIS AND THERAPY 476 (Mark H. Beers, M.D. & Robert Berkow, M.D. eds., 17th ed., Merck Research Laboratories 1999). The condition is accompanied by pain. *Id.*

[5]Radiculopathy is a disorder of the spinal nerve roots. STEADMAN'S MEDICAL DICTIONARY 1503 (27th ed., Lippincott Williams & Wilkins 2000).

[6]A "herniated nucleus pulposis" is a herniation of an intervertebral disk. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY ("DORLAND'S") 1243 (29th ed., W.B. Saunders Co. 2000).

[7]"Lumbar laminectomy" is the excision of the posterior arch of a vertebra. DORLAND'S at 960.

decompression of bilateral L2-3 and L3-4 with bilateral foraminotomies[8] to correct his back problems. Mr. Phillips remained on a medical leave of absence until the termination of his employment in March 1998 (R. 198-99).

After the surgery, Dr. Strzyz reported that Mr. Phillips was doing well (R. 156). The patient's range of motion was good, although with some restrictions; his lasegue signs[9] were negative and the reflexes were symmetric, +1 (*Id.*). Dr. Strzyz referred Mr. Phillips for flexion and extension exercises.

In January 1998, Mr. Phillips reported increased pain in performing the prescribed exercises. During the medical examination, Mr. Philips's back range of motion was good, and he only complained of pain during extreme motion. His reflexes were still symmetric, the sensory exam was grossly intact, and the motor exam appeared normal. Based on these medical findings, Dr. Strzyz referred Mr. Phillips for work hardening and treatment (R. 156). One month later, however, in February 1998, Mr. Phillips discontinued the work hardening program due to increasing pain (R. 155). He also complained of numbness down the posterior left buttock and his left leg giving out at times (*Id.*). On examination, Mr. Phillips's back range of motion turned out to be limited in all ranges of motion. However, his surgical wound had healed well, without tenderness or infection; the strength in both extremities was intact; and his sensory exam was satisfactory (*Id.*).

Due to pain complaints, Mr. Phillips had another EMG test in March 1998 (R. 149, 155). The test revealed some L5 root irritation, but without definite denervation. At the same time, the

---

[8]"Foraminotomy" is the operation of removing the roof of intervertebral foramina (a natural opening or passage), done for the relief of nerve root compression. DORLAND'S at 696, 698.

[9]Lasegue's sign occurs in sciatica, when flexion of the hip is painful if the knee is extended, but it is painless when the knee is flexed. This distinguishes the disorder from disease of the hip joint. DORLAND'S at 1642.

studies revealed normal distal motor latencies, normal nerve conduction velocities and normal motor unit potentials (R. 149). Dr. Strzyz reported that the EMG showed some L5 root irritation, however, the previous myelogram did not show any abnormality at L4-5 or L5-S1 (R. 148, 155). Dr. Strzyz reported that Mr. Phillips was feeling better despite some aching and tightness in his legs with prolonged standing or walking, and he recommended more physical therapy followed by work hardening (R. 148, 155).

On May 5, 1998, Dr. Strzyz wrote that Mr. Phillips reported he was feeling better, except for some aching and stiffness in his lower back and legs. In his final analysis, Dr. Strzyz opined that although Mr. Phillips was not yet able to return to work, with continued therapy, he should be able to return to some level of employment in the future (R. 148). Mr. Phillips stopped seeing Dr. Strzyz because Mr. Phillips's health insurance benefits ran out and he could no longer afford treatment from Dr. Strzyz (R. 200).

A consultative physician, Dr. Patil, examined Mr. Phillips at the request of the Social Security Administration in September 1998 (R. 165-170). Dr. Patil reported some mild limitations on Mr. Phillips's range of motion in the weight bearing joints (R. 166, 169-70). However, Dr. Patil did not observe any deformities in Mr. Phillips's spine. There was no paravertibral tenderness or spasm; no acute arthritic process or recent trauma were noted; and the patient's gait was normal. Mr. Phillips could walk 100 feet without a cane; however, Dr. Patil noted that Mr. Phillips "prefers to use a cane while walking to bear the weight," and that using the cane was helpful in this regard (R. 167).

Dr. Patil indicated that Mr. Phillips had some difficulty with the following: hopping on one leg, getting on and off the table, squatting and rising, stooping, crouching, kneeling and crawling (R.

6

170). However, Mr. Phillips had no trouble with squeezing, picking-up, writing, grip strength, walking, using a chair, or standing (R. 169-70). Dr. Patil also reported that an April 1998 EMG showed some irritation at the L5 nerve root, but that no abnormality appeared at that level on a prior myelogram/myelogram CT (R. 167-68); all Mr. Phillips's nerve functions were preserved, and his reflexes were brisk and equal bilaterally throughout (R. 167). No pathological reflexes could be elicited, co-ordination was intact, and the cerebral function tests were normal (*Id.*). Superficial and deep sensations were unimpaired, and a motor strength of 5/5 in his upper and lower extremities was noted. There was no sign of muscle wasting or paralysis (*Id.*).

Dr. Robert England, who reviewed the record on behalf of the Social Security Administration ("SSA") in October 1998, reported that Mr. Phillips's physical condition limited him to occasional carrying or lifting a maximum of 50 pounds, frequent lifting or carrying of no more than 25 pounds, and the least restrictive regime of about 6 hours of standing, walking or sitting in an 8-hour workday, frequent climbing, balancing, kneeling, crawling, and occasional stooping or crouching (R. 171-78). According to Dr. England, the medical data did not support the necessity of using a cane (R. 178). Dr. England's findings about Mr. Phillips's lifting, walking and standing capabilities also coincided with the earlier medical examination conducted by Dr. Pilapil in July 1998 (R. 157-64). Both Dr. England and Dr. Pilapil regarded Mr. Phillips as able to do occasional stooping and crouching (R. 159, 173). Although the earlier review by Dr. Pilapil found Mr. Phillips limited to only occasional climbing (including ramps or stairs), balancing, kneeling, and crawling. Dr. Pilapil also concluded that the projected RFC would allow Mr. Phillips to undertake medium work (R. 164). More recent findings by Drs. Patil and England (made about two months later) found even fewer limitations in the mentioned areas (R. 165-70, 173).

7

In January 1999, Mr. Phillips underwent an MRI of the lumbar spine at Cook County Hospital (R. 179-80). The MRI showed disc degeneration at L3-L4, L4-L5, and L5-S1 (*Id.*). The radiology report noted facet arthropathy, a small annular tear/focal epidural scar, and mild thecal sac deformity at L5-S1, but no definite herniation (R. 179). At L4-L5, the radiologist reported the disc degeneration, bulging, facet arthropathy, and mild to moderate residual central canal stenosis, but no definite herniation (although lateral herniation could not be excluded) (*Id.*). There appeared to be some mild residual stenosis at L3-L4, some disc bulging, anterior osteophytes, and facet arthropathy (R. 180).

In March 1999, Mr. Phillips consulted Dr. Gandhi in the Neurosurgery Clinic of Cook County Hospital (R. 183). Dr. Gandhi reported that the examination of Mr. Phillips revealed negative straight leg raising bilaterally, decreased pinprick in the left lower extremity, and diminished left ankle jerk. Dr. Ganghi's clinical impression was persistent left sciatica (*Id.*).

**C.      The ALJ's Decision.**

The ALJ's written decision followed the sequential evaluation assessment outlined in 20 C.F.R. §§ 404.1520 and 416.920 (2001). The first step of the sequential evaluation involves determining whether the claimant has engaged in substantial gainful activity since his alleged disability onset date, in this case October 28, 1997. The ALJ found that Mr. Phillips had not engaged in disqualifying substantial activity since October 28, 1997 (R. 12).

The second step of the sequential evaluation involves determining whether the claimant has a "severe" impairment, or combination of impairments, which significantly limits his physical or mental ability to do basic work activities. The ALJ found adequate the evidence establishing that

Mr. Phillips has medically determinable impairments of lumbar spinal stenosis and mild obesity which meet the definition of "severe."

The third step of the sequential evaluation required the ALJ to determine whether Mr. Phillips' impairments met or equaled the requirements for an impairment contained in the regulatory listing. The ALJ found that Mr. Phillips' impairments neither met the requirements nor equaled the level of severity contemplated for any impairment in the regulatory listing at any time since his alleged disability onset date (R. 14-15). In making this determination, the ALJ found that Mr. Phillips has the residual functional capacity to perform work in the national economy because he is capable of lifting/carrying 25 pounds frequently and 50 pounds occasionally (R. 14). Despite allegations to the contrary, the ALJ did not find any further evidentiary support for other exertional or nonexertional limitations (*Id.*). The ALJ concluded that all necessary findings that supported the requirements of the medical listings concerned the period before the surgery, and that the post-surgery findings did not support the existence of statutorily contemplated limitations (R. 13). The ALJ also concluded that Mr. Phillips's testimony was not credible (*Id.*). In reaching this conclusion, besides pointing to the medical evidence, the ALJ also noted that although Mr. Phillips claimed he could not do anything due to disabling pain and sleeplessness, he nevertheless did "not look haggard or effete" at the hearing, and he was able to drive his sister's child to school and pick up papers on his way back (R. 13).

Furthermore, according to the ALJ, the medical evidence and Mr. Phillips's statements to treating and consultative physicians were not consistent with his testimony at the hearing and did not support any worsening of the plaintiff's condition (*Id.*). In this respect, the ALJ pointed to the letter of Dr. Strzyz from May 5, 1998, stating that Mr. Phillips reported an improvement in his condition,

except for some aching and tightness in the legs. The ALJ emphasized that although Mr. Phillips complained of moderate to severe pain, the examining physician, Dr. Patil, did not find the plaintiff in any acute distress (*Id.*). Dr. Patil's examination also showed no proof of spasm and the plaintiff's reflexes and nerve functions were normal (R. 13-14). The ALJ reasoned that, in spite of the claimant's alleged incapacity, the doctor found no signs of muscle wasting, the motor strength was at a maximum in all extremities, and the peripheral pulses were also equal and normal (R. 14). The ALJ pointed out that although the EMG study from March 1998 showed some irritation of the L5 root, the previous myelogram of the same areas was normal (R. 14, 149, 155). The ALJ also noted that Mr. Phillips stopped his regular medical treatment in April 1998, and did not resume doctor consultations until March 1999, when he visited Dr. Gandhi.

Finally, the ALJ considered two other pieces of medical evidence: an MRI taken in January 1999 and the report of Dr. Gandhi from March 1999. The ALJ found this evidence ambiguous at best, since it had not been present at the earlier consultative examination (R. 14). The ALJ concluded that although the January 1999 MRI showed some bulging, arthritis, and stenosis, it also contained no evidence of disc herniation (although the report does not exclude it either) (*Id.*). As for Dr. Gandhi, whose examination of Mr. Phillips revealed decreased pinprick in the plaintiff's lower left extremity and diminished left ankle jerk (R. 183), the ALJ found his opinion ambiguous because the noted responses were within Mr. Phillips's control, and they were not present at the earlier consultative examination (R. 14). Furthermore, the timing of Mr. Phillips's return to treatment seemed suspicious to the ALJ since Mr. Phillips stopped his treatment in April 1998, only to re-initiate it in March 1999, three weeks after the hearing (R. 14, 183-86). The ALJ also noted

that the negative straight leg raising reported by Dr. Gandhi additionally belied Mr. Phillips's testimony of severe pain (R. 14).

Given the objective medical findings, and the assessment of Mr. Phillips's credibility, the ALJ found that Mr. Phillips has the residual functional capacity to perform the requirements of work except for lifting/carrying more than 25 pounds frequently or 50 pounds occasionally, and that Mr. Phillips does not meet or equal the requirements for the impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1 (R. 15).

The fourth step of the sequential evaluation required the ALJ to determine whether Mr. Phillips was able to perform his past relevant work. The ALJ found that Mr. Phillips could perform his past relevant work as a crane operator and forklift driver, since he could engage in a full range of medium work activity. The ALJ came to this conclusion by analyzing the testimony of Mr. Phillips who stated that his past relevant employment involved very little bending (R. 15). The ALJ also considered the testimony of the vocational expert who reported that Mr. Philips' job belonged to the low-end semi-skilled category, and required only light-level lifting (*Id.*). In making these determinations, the ALJ found Mr. Phillips' complaints of pain excessive and not entirely credible (R. 13).

Accordingly, the ALJ found that Mr. Phillips had not been under a disability for the purposes of Title II of the Social Security Act at any time since the alleged onset date through the date of the decision (R. 15-16).

## II.

In order to establish a "disability" under the Social Security Act (the "Act"), a claimant must show that he has an "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). A claimant must demonstrate that his impairments prevent him from performing not only his past work, but also any other work that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A). The Social Security Regulations prescribe a sequential five-part test for determining whether a claimant is disabled. *See* 20 C.F.R. § 404.1520. Under this rule, the ALJ must consider: (1) whether the claimant is presently unemployed; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) whether the claimant is unable to perform his past relevant work; and (5) whether the claimant is unable to perform any other work existing in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520; *see also Young v. Secretary of Health and Human Services*, 957 F.2d 386, 389 (7th Cir. 1992).

A finding of disability requires an affirmative answer at either Step 3 or 5. A negative answer at any step other than Step 3, precludes a finding of disability. *Id.* The claimant bears the burden of proof at Steps 1 through 4, after which the burden of proof shifts to the Commissioner at Step 5. *Id.* In cases of severe impairment, the ALJ's analysis at Step 4 typically involves an evaluation of the claimant's residual functional capacity to perform the past relevant employment. *See* 20 C.F.R. § 404.1520(e). If a person can still do this kind of work, the Commissioner will find that person not

disabled. *Id.* The Step 5 analysis involves an evaluation of the claimant's residual functional capacity to perform any other work in the national economy (other than the relevant past employment). *See Bowen v. Yuckert*, 482 U.S. 137, 142 (1987); 20 C.F.R. § 1520(f).

In reviewing the Commissioner's (here the ALJ's) decision, this Court may not decide facts anew, reweigh the evidence, or substitute its own judgment for that of the Commissioner. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). The Court must accept the findings of fact that are supported by "substantial evidence," 42 U.S.C. § 405(g) (1988), which is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Herron*, 19 F.3d at 333 (quoting *Richardson v. Perales*, 402 U.S. 389, 391 (1971)). Where conflicting evidence allows reasonable minds to differ, the responsibility for determining whether a claimant is disabled falls upon the Commissioner (or the ALJ), not the courts. *Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). *See also Stuckey v. Sullivan*, 881 F.2d 506, 509 (7th Cir. 1989) (the ALJ has the authority to assess medical evidence and give greater weight to that which the ALJ finds more credible). The Court is limited to determining whether the Commissioner's final decision is supported by substantial evidence and based upon proper legal criteria. *Ehrhart v. Secretary of Health and Human Services*, 969 F.2d 534, 538 (7th Cir. 1992). A finding may be supported by substantial evidence even if a reviewing court might have reached a different conclusion. *Delgado v. Bowen*, 782 F.2d 79, 83 (7th Cir. 1986) (per curiam).

However, the Commissioner (or ALJ) is not entitled to unlimited judicial deference. The ALJ must consider all relevant evidence and may not select and discuss only that evidence which favors his or her ultimate conclusion. *Herron*, 19 F.3d at 333. Although the ALJ need not evaluate in writing every piece of evidence in the record, the ALJ's analysis must be articulated at some

13

minimal level and must state the reasons for accepting or rejecting "entire lines of evidence." *Id. See also Young*, 957 F.2d at 393 (ALJ must articulate reason for rejecting evidence "within reasonable limits" if there is to be meaningful appellate review); *Guercio v. Shalala*, No. 93 C 323, 1994 WL 66102, *9 (N.D. Ill. 1994) (ALJ need not spell out every step in reasoning, provided the ALJ has given sufficient direction that the full course of the decision may be discerned) (citing *Brown v. Bowen*, 847 F.2d 342, 346 (7th Cir. 1988)). The written decision must provide a "logical bridge from the evidence to [the] conclusion" that allows the reviewing court a "glimpse into the reasoning behind [the] decision to deny benefits." *See, e.g., Zurawski v. Halter*, 245 F.3d 881, 887-89 (7th Cir. 2001) (*quoting Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)).

## III.

At Step 4, the ALJ found that Mr. Phillips was not disabled because he was able to perform his past relevant work as a crane operator and forklift driver. The ALJ made this determination based on his conclusion that Mr. Phillips has the residual functional capacity to perform medium work, and that this enabled him to perform his past relevant work as a crane operator and fork lift driver (R. 15 (Finding Nos. 6 and 7)). Mr. Phillips challenges this determination on two grounds: *first*, he contends that the ALJ erred in rejecting his complaints of disabling pain as not "fully credible"; *second*, he argues that the ALJ's conclusion regarding the claimant's exertional ability to perform a full range of "medium work" is not supported by substantial evidence.

For the reasons set forth below, the Court finds that the ALJ's credibility determinations are supported by substantial evidence. However, the Court finds that the ALJ's Step 4 conclusion that Mr. Philips is capable of performing his past relevant work cannot stand, because the ALJ has failed

to build a "logical bridge" from the evidence to the finding that is the threshold premise to that conclusion – that Mr. Phillips's RFC allows him to perform medium work.

## A.

Mr. Phillips argues that the ALJ improperly discounted his complaints of pain and failed to follow the SSA's pain assessment guidelines. After review of the ALJ's opinion, the Court disagrees.

When evaluating a claimant's subjective complaints of a disabling pain, a two-step process must be followed. *See* C.F.R. § 404.1529. Initially, the ALJ must determine whether the pain alleged is substantiated by objective medical evidence. *See Luna*, 22 F.3d at 691. If the complaints of pain are not supported by the objective medical evidence and the claimant indicates that pain is a significant factor of her alleged inability to work, then the ALJ must obtain detailed descriptions of claimant's daily activities by directing specific inquiries about the pain and its effects to the claimant. *Id.* The ALJ "must investigate all avenues presented that relate to pain, including [the] claimant's prior work record information and observations by treating physicians, examining physicians, and third parties. Factors that must be considered include the nature and intensity of claimant's pain, precipitation and aggravating factors, dosage and effectiveness of any pain medications, other treatment for the relief of pain, functional restrictions, and the claimant's daily activities." *Zurawski*, 245 F.3d at 887; SSR 96-7p. The ALJ may not select and discuss only that evidence which favors his ultimate conclusion. *See Herron*, 19 F.3d at 333.

Here, the ALJ assessed Mr. Phillips's allegations of pain and found them excessive (R. 13). In making this credibility determination, ALJ considered the medical evidence contained in the reports of Dr. Strzyz (Mr. Phillips's treating physician), as well as the opinion of the SSA's

consultative examiner, Dr. Patil, and the RFC assessment performed by the Agency reviewer, Dr. England. The ALJ also took into account the testimony of the VE, and the plaintiff's own statements. At the same time, the ALJ considered, but found as inconclusive, the two pieces of medical evidence Mr. Phillips relied upon to establish his disability claim based on pain: his MRI taken on January 1999, and the March 1999 letter of Dr. Gandhi. In conducting that review, the ALJ assessed all major pieces of evidence presented by Mr. Phillips on the issue of pain, and minimally articulated his reasons for finding Mr. Phillips's complaints of pain not credible.

An ALJ's credibility findings will not be overturned by a court unless they are "patently wrong." *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). However, a decision regarding a claimant's credibility "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Zurawski*, 245 F.3d at 887 (quoting SSR 96-7p). The ALJ must minimally articulate his reasons for crediting or rejecting evidence of disability. *Scivally v. Sullivan*, 966 F.2d 1070, 1076 (7th Cir. 1992). But only a minimal level of articulation by the ALJ as to his assessment of the evidence is necessary. *Stein v. Sullivan*, 966 F.2d 317, 320 (7th Cir. 1992). "If a sketchy opinion assures us that the ALJ considered the important evidence, and the opinion enables us to trace the path of the ALJ's reasoning, the ALJ has done enough." *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985). In this case, the ALJ's credibility findings are supported by substantial evidence, and are not patently wrong.

### 1. Dr. Strzyz's Letter.

In May 1998, Dr. Strzyz wrote a letter stating that Mr. Phillips reported feeling better after his back surgery in November 1997 (R. 148). Dr. Strzyz also expressed an opinion that, although unable to return to work at that time, Mr. Phillips should be able to return to some sort of employment in the future (R. 148). This statement of post-surgical improvement is inconsistent with Mr. Phillips's later assertions during the administrative hearing, where he stated that he was not feeling any better with respect to his back pain and leg numbness after the surgery (*i.e.*, the only improvement that Mr. Phillips testified to was the absence of the hot flashes) (R. 13, 200-01). Given this inconsistency, the ALJ was entitled to choose between the conflicting evidence and give more weight to the opinion of the treating physician than to the claimant. *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000) (treating physician's opinion regarding nature and severity of medical condition entitled to controlling weight if well-supported by medical record and not inconsistent with other substantial evidence in record).

### 2. Dr. Gandhi's Letter.

In January 1999, Mr. Phillips obtained an MRI ("January MRI") of his back. At the administrative hearing, Mr. Philips's attorney asked the ALJ to leave the record open for 30 days to permit Dr. Gandhi to evaluate the results of the January MRI (R. 187-88). The ALJ agreed to this request, and even offered advice to Mr. Phillips regarding how to make Dr. Gandhi's report advantageous by making it "as specific and factual" as possible (R. 188). *See* 20 C.F.R. § 404.1527(d)(3) (the weight given to medical source opinions is based on whether such opinions are supported by relevant evidence and good explanations). Dr. Gandhi, however, only presented a short statement recommending conservative drug treatment; the letter did not evaluate the January MRI

results (R. 183). Nor did Dr. Gandhi's brief report, although acknowledging claimant's complaints of pain, render a medical opinion that Mr. Phillips's pain was significant enough to be disabling.[10]

### 3. Lack of Other Objective Medical Evidence.

It is a claimant's burden at Step 4 to submit evidence showing that the claimant is unable to perform his past relevant work. *See* Young, 957 F.2d at 389. In this case, the ALJ's evaluation is entitled to deference because there is no objective medical evidence in the record to contradict the ALJ's credibility determinations. Accordingly, Mr. Phillips was obligated to furnish the evidence that the ALJ could use to reach conclusions about claimant's medical impairment and its effect on his ability to work on a sustained basis. *Luna*, 22 F.3d at 693. Mr. Phillips did not submit any objective medical evidence to show that he was disabled due to pain. In fact, the ALJ found it significant that, despite claimant's complaint's of pain, he did not seek treatment for several months (R. 14). *See Bentley*, 52 F.3d at 786 (finding that the absence of pain medicine and failure to seek medical treatment for a period of one year during a period of claimed disability tends to indicate tolerable pain); *cf. Luna*, 22 F.3d at 691 (claimant's complaints of pain were exaggerated where, among other things, the claimant failed to seek further medical assistance despite his claim of incapacitating pain). The record indicates that Mr. Phillips, although claiming pain and lack of insurance, was ultimately able to seek and obtain medical help in a free clinic of Cook County Hospital in 1999 (R. 179-80, 183). However, the ALJ considered the timing of this effort, which coincided with the administrative hearing, as suspicious (R. 14). Based on the case law, the ALJ

---

[10]Paradoxically, Dr. Gandhi's medical report could lend further support for the ALJ's finding that Mr. Phillips's complaints of pain were not credible, because the brief letter recites evidence regarding the negative results of the straight leg raising and pinprick tests which, according to the ALJ, additionally belied Mr. Phillips's testimony of severe pain (R. 14).

could reasonably infer from the timing of Mr. Phillips's clinical visit that his complaints of disabling pain were exaggerated because he had been able to tolerate the pain without medical intervention for some time prior to the hearing.

### 4. The ALJ's Observations of Mr. Phillips.

In reaching his determination, the ALJ also considered how Mr. Phillips lives everyday life, and relied on his own observations of Mr. Phillips during the administrative hearing. For example, the ALJ noted that although the plaintiff claimed chronic sleeplessness related to incapacitating pain, he did not look "haggard or effete" during the hearing (R. 13).

Generally, an ALJ's credibility determination deserves deference because of the ALJ's unique position to observe a witness. *See Diaz*, 55 F.3d at 308 (ALJ's credibility determination deserves deference because ALJ in unique position to observe witness); *see also Kelley v. Sullivan*, 890 F.2d 961, 964 (7th Cir. 1989) (ALJ's credibility determinations deserve considerable weight because ALJ able to observe witness). The Court, after carefully reviewing the ALJ's decision and the entire record, finds that the ALJ's credibility findings regarding Mr. Phillips's complaints of pain are not patently wrong, because they are based on substantial evidence in the record and the ALJ minimally articulated his reasons for such findings.

### B.

We now turn to the ALJ's conclusion that Mr. Phillips "has the capacity for a full range of medium work" (R. 14), which means that he could perform the requirements of work other than "lifting/carrying more than 25 lbs. frequently or 50 lbs. occasionally" (R. 15, Finding No. 6). Based on this RFC, the ALJ concluded that Mr. Phillips could perform his past work as a crane operator and fork-lift driver (R. 15 and Finding No. 7).

In making the finding concerning Mr. Phillips's RFC, the ALJ stated that "despite allegations to the contrary, there are no other exertional or non-exertional limitations in evidence" (R. 14). It is difficult to understand how the ALJ could have made this statement, in the face of unrebutted reports by three different doctors stating that Mr. Phillips had limitations beyond the amount of weight he could lift.

In July 1998, a Social Security Examiner, Dr. Pilapil, reported that Mr. Phillips had limitations which permitted him only "occasionally" to climb, balance, stoop, kneel, crouch, or crawl (R. 159). On September 30, 1998, Dr. Patil stated that Mr. Phillips could squat and rise only "with some difficulty," and also had "some difficulty" with balance, crouching, kneeling and crawling (R. 170). Shortly thereafter, on October 7, 1998, another Social Security Examiner, Dr. England, indicated that Mr. Phillips was limited in his ability to stoop and crouch (R. 173).[11]

This medical evidence, coming from three different sources, is at odds with the ALJ's conclusion that Mr. Phillips had no exertional limitations other than constraints on his ability to lift weight. Of course, the ALJ is not entitled to selectively discuss only the evidence that supports his conclusion, and to ignore the rest. *Herron*, 19 F.3d at 333. To the extent that the ALJ considered this evidence, the Court is offered no explanation as to why he rejected it, contrary to the rule that the ALJ must state reasons for accepting or rejecting "entire lines of evidence," *Herron*, 19 F.3d at 333, so as to allow the Court a "glimpse into the reasoning" behind his decision. *Zurawski*, 245 F.3d at 889.

---

[11]The form completed by Dr. England also indicates that there was certain climbing that Mr. Phillips never would be able to do, but it is unclear whether that was climbing involving ramp and stairs or climbing involving ladder, rope and scaffolds (R. 173).

Moreover, this evidence that the ALJ failed to address cannot be dismissed as merely peripheral; it directly affects the validity of the finding that Mr. Phillips could perform the full range of medium work. Under the regulations, a full range of medium work includes, among other things, the ability to bend or stoop frequently. *See* SSR 83-10 and 20 C.F.R. 404.15667(c). The limitations expressed by Drs. Pilapil, Patil, and England with respect to Mr. Phillips's ability to bend and stoop (and to engage in other certain physical maneuvers) relates directly to whether Mr. Phillips can perform the full range of medium work envisioned by the regulations. If these doctors are correct, and Mr. Phillips can "bend or stoop only occasionally," then he cannot perform the full range of medium work as the ALJ found. And, the ALJ offers no explanation as to why the findings of these three different doctors should be rejected.

The Commissioner contends that the Court should overlook the ALJ's finding that Mr. Phillips was able to perform medium work as immaterial, on the ground that the ALJ "reasonably found" that Mr. Phillips is not disabled because there is substantial evidence to conclude that (a) Mr. Phillips's prior job involved light work, and (b) that Mr. Phillips retains the residual capacity to perform that work (Def.'s Mem. 13-14). In short, what the Commissioner asks is that we treat the above mentioned defects and the ALJ's finding of a medium work RFC as harmless. In considering the Commissioner's argument, the Court is mindful of the maxim that "[n]o principle of administrative law or common sense requires us to remand the case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989). However, the "imperfection" in the ALJ's opinion here is not on a trivial matter, and is not something that can be chalked up to a mere slip of the pen. Rather, the ALJ – without explanation – has attributed to Mr. Phillips a residual functional capacity that is at

evidence from three different doctors. In the face of a serious mistake of this character, "the reviewing court must reverse unless satisfied that no reasonable trier of fact could have come to a different conclusion." *Sarchet v. Chater*, 78 F.3d 305, 309 (7th Cir. 1996); *see also Spaulding v. Halter*, 248 F.3d 1159, 2001 WL 311420 *5 (7th Cir. 2001).

To affirm here, the Court would have to make findings concerning the specific extent of Mr. Phillips's exertional limitations other than lifting, and then further findings concerning whether, with those limitations, Mr. Phillips could perform his prior work (and if not, whether he nonetheless could perform other work existing in substantial numbers in the national economy). However, the Seventh Circuit has made it abundantly clear that courts "have no authority to supply a ground for the agency's decision." *O'Connor v. Sullivan*, 938 F.2d 70, 73 (7th Cir. 1991). Put another way, "we cannot rectify the error [of the ALJ] by playing administrative law judge." *Id.*

Accordingly, the Court expresses no view as to what residual functional capacity Mr. Phillips possesses, and what work that RFC would allow him to perform. Rather, we remand the case to the Commissioner for further proceedings to specifically address the medical evidence concerning Mr. Phillips's exertional limitations other than lifting, and whether he is able to perform work (whether his past work or other) given those limitations. On remand, of course, the ALJ may take additional evidence if the ALJ deems it necessary to do so.

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for summary judgment (doc. # 7) is denied. The plaintiff's motion for summary judgment (doc. # 6) is granted; the Commissioner's

decision is reversed, and the case is remanded for further proceedings consistent with this opinion, pursuant to Sentence IV, 42 U.S.C. § 405(b).

ENTER:

SIDNEY I. SCHENKIER
**United States Magistrate Judge**

**Dated: August 16, 2001**